LOUIS POSPISIL, APPELLEE, V. ARTHUR ACTON, APPELLANT.

FILED MARCH 12, 1929. No. 26157.

*Jack, Laughlin & Vette,* for appellant.

*Bartos, Bartos & Placek* and *James A. McGuire, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

Assault and battery. Plaintiff stated in his cause of action that the defendant, without any provocation, as-

saulted plaintiff by striking him with a chair, thereby causing him severe injuries. The defendant answered, alleging that at the time in question, while defendant was seated in a chair, plaintiff, without any provocation, struck defendant a violent blow upon his head, causing the defendant and the chair whereon he sat to turn about on the floor, and that defendant thereupon, and in self-defense, and in defense of his wife and children, quickly arose, seizing the chair in which he had been sitting, and admits that he then struck the plaintiff with said chair, but with no more force than defendant believed to be and which actually was necessary to repel said unlawful assault of the plaintiff. Plaintiff replied by general denial. The case was tried to a jury, which returned a verdict for the plaintiff for $1,324.80, upon which judgment was rendered, and defendant appeals.

The situation and relationship of the parties, as shown by the evidence, was substantially as follows: Defendant was a farmer about 28 years of age, weighed 150 pounds, and lived with his wife and two children, one 2½ years of age, and one about 9 months, in the house in which the assault took place. Plaintiff was the hired man on the farm, living with the family, and was a deaf mute. He was 36 years of age, weighed about 175 pounds, and very strong and husky. He had worked for defendant off and on for about a year and a half, and for several months prior to the assault. At the time of the trouble the evening meal had just been finished. The day before the assault the plaintiff had suffered an accident by falling from a wagon, and injured his back, of which he complained. The occurrences after supper, as detailed by the defendant and corroborated by his wife, are about as follows: Plaintiff left the supper table and, looking at the defendant, addressed him in sign language, with which communication was had between the parties, pointed to his back, and said, "I wish you had a back like mine." He then walked over a short distance and sat down in a rocking chair. Defendant was then sitting on a couch nearby

with his small boy, and, supposing plaintiff was joking, smiled and said nothing. After being seated, plaintiff said, always in sign language, "kill," "I will kill you," and repeated it several times, the while appearing and being very angry and excited. Defendant then got up, saying, "You can't talk like that in my house, I'll pay you off and you can get out," and walked past the plaintiff to a buffet, secured a time book and returned to the dining table for the purpose of writing a check for the amount due plaintiff. As he was sitting in the chair he turned his head around to look at a calendar for the purpose of getting the date, when without provocation, plaintiff arose quickly from the rocking chair and struck defendant a glancing blow on the side of the head. Defendant testifies that he warded off the blow by striking up plaintiff's arm; that, notwithstanding, the blow caused him to spin around in his chair, and he immediately got up, seized the chair and struck the plaintiff. He testifies that the deed was in self-defense and in defense of his family, and that he used no more force than was apparently necessary for that purpose. We have not attempted to give the language of the witnesses, but the above is the effect of their testimony.

The principal error assigned by defendant, and the one which we deem it necessary to consider, is the refusal of the trial court to give certain instructions requested by defendant. In the statement of the issues the trial court epitomized the answer of defendant as follows: "That without any previous provocation on his part the plaintiff violently, maliciously and unlawfully struck defendant a severe glancing blow along his right temple, and that defendant thereupon, and in self-defense, seized the chair in which he had been sitting and struck plaintiff upon the left side of his head with said chair, but with no more force than he believed to be and which actually was necessary to resist and repel said unlawful assault." And the subsequent instructions submitted the case to the jury upon the theory of self-defense only, without any refer-

ence whatever to the place of the assault or the claim of defendant that he acted in defense of his family.

The defendant requested the court to give the following instructions, among others:

"Instruction No. 1. You are instructed that the undisputed evidence in this case shows that the plaintiff was struck on the head by a chair in the hands of defendant. The defense in this case is that this was done in self-defense and in defense of his family, who were nearby. The burden of proof is on defendant to prove this defense by a preponderance of the evidence. And if you believe from the evidence that the defendant has so proved this defense, you will find for the defendant and against the plaintiff."

"Instruction No. 5. If, from the evidence in this case, the jury believe that the defendant acted in the defense of his person, or of his family, or both, from real and honest convictions as to the character of the danger, induced by reasonable evidence, although he might be mistaken as to the extent of the actual danger, then the jury should find for the defendant, unless from the evidence you believe that defendant used an unnecessary degree of force or violence under the circumstances."

By these instructions defendant sought to avail himself, not only of self-defense, but of his claimed defense of his family, and both instructions were refused.

In support of the ruling of the trial court plaintiff contends that the claim of defendant in his answer and evidence, that he acted in defense of his family, is insufficient in law, for the reason that, before one may claim to act in defense of a third person, such third person must have been the subject of an attack or in such imminent danger thereof as to induce one exercising a reasonable and proper judgment to interfere to prevent the consummation of the injury, and that no such situation is presented by the evidence. The rule is stated in 5 C. J. 638, sec. 35:

"A person is justified in using sufficient force to protect the members of his family, provided the apparent danger is such as to induce one exercising a reasonable

and proper judgment to interfere to prevent a consummation of the injury."

We approve this statement of the rule but under it the question to be determined is whether or not the danger to the family was so apparent as to justify the act of the defendant. This is a question of fact ordinarily for the determination of the jury. Of course, there may be cases where the claim of justification is so flimsy and without reasonable foundation that the court may decide it as a question of law. Is the instant case one of these? We think not. While the imminent attack was upon the defendant only, it must be remembered, upon the theory and evidence of the defendant, that the altercation took place in a room of the defendant's house, at a time just before dark, in the presence of defendant's wife, who was sitting with her small boy upon her lap only three or four feet away; that plaintiff looked furiously angry, was a deaf mute and therefore not entirely normal, and there was some evidence of some slightly violent conduct of plaintiff toward defendant's wife a few weeks previous to the occurrence. All of these facts were proper to be taken into consideration by the jury in determining the final question whether or not defendant acted, under all the circumstances, as a reasonably prudent man would have done.

We think the evidence was sufficient to require the submission to the jury of the question whether or not defendant was acting in defense of his family, because, taking the theory of the defense, the assault of defendant was entirely without provocation, was by a large and powerful man, apparently in a state of uncontrollable anger, and it was probably impossible for defendant in the excitement of the moment to measure with any degree of accuracy the final effects of such an attack if the same were not immediately stopped. But for defendant's good fortune in deflecting the blow, who can say who would be the next victim of plaintiff's passion. It seems a natural conclusion that defendant would have in mind the nearby presence of his wife and child, and that such situation had some part in prompting him in the determination

of the necessary measures to be taken to stop the assault upon himself and prevent its possible extension to his wife and child. Furthermore, the attack was made in a room of defendant's house, where escape was difficult and, even if possible, would have been the resort of a coward. An interesting discussion of the right of a man to defend his family when they are not directly attacked will be found in *Higgins v. Minaghan*, 78 Wis. 602. See, also, *Coons v. State*, 68 Tex. Cr. Rep. 596. Under such circumstances the defendant cannot be required to measure with accuracy the results of noninterference. All that is required of him is that he act as an ordinarily prudent man would act under the surrounding conditions, and this was a question for the jury.

But whether or not the defense of family is legally sufficient in this case, we think that defendant was entitled to have the jury instructed upon the point covered by the requests above quoted, if not in the exact language thereof, at least upon the subject of the presence of defendant's family at the time of the assault. Surely in determining the quality of defendant's act it was proper for the jury to consider the near presence of his family as an important circumstance tending to color his act. The instructions of the court entirely ignore this feature of the case and submit it to the jury as though the affair had taken place in the street and the two combatants were the only ones involved. It might not have been error for the court to fail to instruct upon such special feature of the case unless requested, but we think when such a feature is presented by the pleadings and evidence and a request for instruction, the jury should be instructed thereon, either in the language of the request or that of the court. In *Strubble v. Village of DeWitt*, 81 Neb. 504, it was held: "When instructions are asked by either party to the suit, which correctly state the law upon the issues presented by the pleadings and the evidence received during the trial, it is error to refuse them, unless the points are fairly covered by other instructions given by the court on its own

motion." 'And at page 505 Fawcett, C., said: "The two instructions requested by defendant correctly stated the law, were in point and should have been given (citing cases). If the court regarded them as defective in form, it should have treated them as requests for instructions on the points designated, and have properly instructed the jury upon the points requested." In *Western Mattress Co. v. Ostergaard,* 71 Neb. 575, we held: "When a special request is made for an instruction which fairly reflects either a meritorious cause of action or ground of defense, the court should either give the instruction requested or substitute another in its stead which embodies the same principle."

Plaintiff contends that instruction No. 11 given by the court meets all the suggestions of the requests. That instruction is as follows:

"The jury are instructed that, in determining the question of the reasonableness of the action of the defendant in striking the plaintiff, they should take into consideration the excitement of the occasion, if any such is proved, the previous violent conduct of the plaintiff towards the defendant, if any such is proved, and from a full, fair and candid consideration of all of the evidence and facts and circumstances proved on the trial determine whether the defendant acted as a reasonable man would under the same circumstances."

In the absence of any request on a particular feature of the case, defendant might not successfully urge error in this instruction, but we think that, where the court instructs the jury what matters may be considered in determining a certain point, all of the major contentions of the parties should be included and only the minor facts and circumstances left to be covered by the catch-all phrase "all other facts and circumstances proved." This would be especially so where the attention of the court is specially called to the point by requested instruction. By instruction No. 11 the jury might fairly conclude that the only important points for their consideration upon the

character of defendant's act were the excitement of the occasion and the previous violent conduct of plaintiff toward defendant, and that the facts and circumstances were of no great importance. We think, however, that the place of the assault, in defendant's home, the unprovoked assault upon defendant, and the near presence of his wife and small child were very important matters for consideration by the jury upon the point covered by the instruction.

For the reasons above stated, judgment must be reversed.

REVERSED AND REMANDED.

GOOD, J., dissenting.

I concur in the propositions of law as announced in the syllabus, but do not concur in the view that the propositions announced are applicable to the facts disclosed by the record.

The record discloses no act of violence on the part of plaintiff towards any member of the family of defendant other than himself; nor does the record disclose any threats by plaintiff against any one other than defendant. Under this state of facts, the trial court properly refused to submit to the jury the proposition that the defendant may have been acting in defense of his family. As I view the record, the only questions for the jury were: First, was defendant acting in defense of his own person when the injuries were inflicted on the plaintiff? second, if so, did defendant use more force than the circumstances warranted? and, third, if so, the amount of recovery. These questions were fairly submitted to the jury upon conflicting evidence. The judgment on the verdict should be affirmed.