SAM KIELLEY, APPELLEE, v. VERYL McCAULEY ET AL., APPELLANTS.

296 N. W. 437

FILED FEBRUARY 14, 1941. No. 30965.

*John C. Mullen,* for appellants.

*Gross & Crawford* and *James J. Gleason, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

Plaintiff brought this action to recover damages sustained by him to his person, caused by the negligence of the defendants. The jury returned a verdict for $12,500, from which the defendants appeal.

The plaintiff, a resident of Omaha, 51 years of age, married and having two children, employed by McIninch Motor Company in its salesroom, located on Harney street west of Twentieth, had been engaged in selling automobiles for 18 or 19 years. August 30, 1938, he left his place of business at about 9:10 p. m. to go home. It was rainy and drizzling. When he arrived at the corner of Twentieth and Farnam streets, he waited for a street car on the curb at the southwest corner of the intersection, which was well illuminated. The street car came along and stopped at its designated and proper place for the purpose of permitting passengers to alight from and board the car. He noticed automobiles which had stopped for the traffic lights and that the lights directing the traffic east and west were red. Before leaving the curb to board the street car, he looked both ways, to ascertain if any automobiles were approaching. Passengers alighted from the street car, and plaintiff proceeded to board it at the regular entrance in front. He noticed a woman step off the car and proceed over to the curb and heard her scream. He hesitated, turned around to see what

the trouble was, and was immediately struck with terrific force by a Packard sedan, which he did not see until it hit him. At the time, he was just inside of the safety zone and heard a crash. When struck, he was facing generally north and a little west, toward the back of the street car. He realized that he was going to be struck and extended one arm, in an effort to take hold of the sedan and succeeded in doing so, but when the sedan struck him it swung around with such force that he was compelled to loosen his hold. He was knocked about four feet from the south curb toward Farnam street and about even with the curb on the west side of Twentieth street. He was struck on his left side, receiving a compound fracture of the right leg. His foot was crushed in the instep and ankle. He remained conscious at all times, did not realize that any bones were broken until he sought to get up, looked down and discovered his injuries.

Plaintiff's wounds consisted of a hematoma of the left arm; that is, a hemorrhage from broken blood vessels into the tissues; a contusion with a hemorrhage in the left thigh; a large laceration on the left foot, extending from the inner malleolus to the base of the second toe; this wound being a compound fracture of a proximal portion. In the right leg he had a compound fracture of both bones, the tibia and fibula; such a compound fracture communicates with the exterior and designates a break through the skin and soft tissues which normally cover the bone. The flesh was cut from the left foot. The reasonable value of the medical service was $360; hospital $150.90; nurse's services $20, ambulance $5, and rental of a wheel chair.

The most graphic picture of the accident is disclosed by the following testimony of one witness: He had started across the intersection of Twentieth street, driving west on Farnam street. The street car was approaching from the west and coming to a stop. The Packard sedan was following the street car. Just as the witness passed the rear end of the street car he heard a loud crash, looked back, slowed down, saw the sedan skidding through the safety

zone at an angle, heard another crash and saw the sedan
spin around on the slippery street. He then saw the plain-
tiff's body lying on the pavement in the position as testified
to by the plaintiff. After the accident, the sedan was on
Twentieth street, about the middle of the street car tracks,
facing northwest. The street car was parked in its original
position, parallel with the safety zone, facing east. When
he first observed the sedan, it was immediately back of the
street car, straddling the outside rail, and proceeding at a
rate of speed of 30 to 35 miles an hour.

Other evidence pertinent to this case has been set out in
more detail in the case of *Hildebrand v. McCauley, ante,*
p. 55, 296 N. W. 434, and reference is made thereto, as
both cases developed from the same accident.

The defendants contend that the trial court erred in
giving an instruction defining the term "proximate cause,"
as follows: "By the term proximate cause is meant the pri-
mary or moving cause or fault where no other and inde-
pendent cause disconnected therewith and self-operating
intervenes to produce the result," and cite *Wagner v. Wat-
son Bros. Transfer Co.,* 128 Neb. 535, 259 N. W. 373, holding
such an instruction to constitute prejudicial error. In the
case of *Hildebrand v. McCauley, supra,* the term "proximate
cause" was not defined in any manner or presented to the
jury. Therefore, it is defendants' contention, both cases
must be reversed, as set forth in *Wagner v. Watson Bros.
Transfer Co., supra,* in which this court held: "Negligence
is not actionable unless it be the proximate cause of the in-
jury to the complaining party." It was further held: "It
becomes the duty of the trial court to submit to the jury
the necessary issues of fact presented by the pleadings and
the evidence, whether requested or not, and a failure to do
so constitutes error."

In the instant case, no attempt is made by the defendants
to in any manner minimize the negligence of the defendants,
and testimony is not affirmatively shown in such respect.
Such is also true in *Hildebrand v. McCauley, supra.* An in-
struction defining the term "proximate cause" becomes

requisite only where some real problem of immediacy of causation is raised in the case. That is to say, the definition has no materiality and no place in a trial judge's instructions where, under the facts of the case, the legal causation is clear, obvious and unmistakable. No problem of legal causation is presented to the jury by the uncontested facts. We deem further discussion of this assignment of error unnecessary.

Defendants contend that the verdict of the jury as to defendant Julian Vosges is not sustained by sufficient evidence.

The liability of members of a partnership, growing out of a partnership business, is joint and several. *Wiley v. National Surety Co.*, 103 Neb. 68, 170 N. W. 349. Partnerships and partners are bound and liable for the tortious acts of their servants, acting within the scope of their employment. 1 Rowley, Modern Law of Partnership, 639; 20 R. C. L. 914, sec. 126.

The evidence covering the foregoing assignment of error is in substance set out in *Hildebrand v. McCauley, supra,* to which we refer. From an analysis of this evidence, we conclude that at the time of the accident neither McCauley nor Omer Vosges had been or were engaged in any mission connected with or within the scope of the partnership business.

We hold that under the evidence in this case there is no basis for fixing the liability of Julian Vosges, since it is not shown by the evidence that a tort was committed in the course of and within the scope of the business of the partnership on the night of the accident. The trial court should have dismissed the action as against Julian Vosges. Other assignments of error need not be discussed.

The judgment of the trial court entered against Julian Vosges is reversed and the case as to her dismissed. In all other respects the judgment is affirmed.

AFFIRMED AS MODIFIED.